[Docket Nos. 16 & 29.]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

LEMIRE ASSOCIATES,

             Plaintiff,

       v.

HOWMET AEROSPACE, INC. and RTI
REMMELE ENGINEERING, INC.,

             Defendants.

Civil No. 23-cv-1345 (RMB/EAP)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

    Words matter. When parties set down words in an agreement, and those words are clear and unambiguous, courts will enforce those written words because they embody the parties' intent. But conduct matters too. Conduct can change the meaning of those written words, and in some cases, render them meaningless.

    The motions before the Court turn on the parties' words and conduct. Plaintiff Lemire Associates (Lemire) sues Howmet Aerospace, Inc. and RTI Remmele Engineering, Inc. (collectively, Howmet) over unpaid sales commissions based on their written agreement. Howmet moves to dismiss Lemire's lawsuit based on the words of that agreement. When Lemire filed this lawsuit, Lemire never mentioned their agreement's arbitration provision until this Court questioned the parties about it. With the Court's permission, Lemire moves to enforce the agreement's arbitration provision and asks this Court to compel arbitration. Howmet resists arbitration, asserting Lemire waived its right to enforce their agreement's arbitration provision through its conduct.

For the below reasons, the Court **DENIES** Lemire's Motion to Compel Arbitration finding Lemire waived its contractual right to arbitrate through its conduct. The Court **GRANTS** Howmet's Motion to Dismiss based on the words of the parties' agreement and for other reasons. The Court **DISMISSES** Lemire's Complaint **WITHOUT PREJUDICE**, and grants Lemire leave to file an amended complaint.

## I.     BACKGROUND

### A. The Contract

In April 2017, the parties contracted whereby Lemire agreed to be a sales representative for Howmet.[1] [Decl. of Tamar S. Wise, Esq. ¶ 3, Ex. A (the Contract) (Docket No. 16-3).] By the Contract, Lemire agreed to, among other things, promote and sell Howmet's products, perform marketing services, provide information on Howmet's products to Howmet's customers, and assist with account receivables. [Contract § 4.] Lemire's only form of compensation under the Contract was a sales commission—about 2% for orders on new and old products. [*Id.* § 10(a), Ex. B.] The Contract provides that Lemire earned a commission only when Howmet receives full and final payment from its customer. [*Id.* § 10(b).] That is, "Commissions are earned as and when [Howmet] receives full, final, and complete payment for the Products sold with respect to each invoice." [*Id.*] Under the Contract, Howmet had to pay Lemire "commissions earned . . . no later than the last day of the month following the month in which payment from the customer is received by [Howmet]." [*Id.*]

---

[1] While Lemire contracted with RTI Remmele Engineering. Inc. (RTI), Howmet is RTI's parent company and Lemire claims that Howmet assumed RTI's obligations under the Contract. [Notice of Removal ¶ 3, Ex. A, ¶¶ 6, 10 (Complaint) (alleging that RTI is "a wholly owned subsidiary of Howmet") (Docket No. 1).]. Thus, the Court refers to RTI as Howmet.

The parties agreed the Contract would expire after three years, but they could agree to extend it in writing.  [*Id.* § 22(a).]  Under the Contract, Howmet could terminate the agreement with or without cause provided it gave Lemire 180-days written notice.  [*Id.*]  Howmet's termination of the Contract would not affect the parties' rights or obligations that accrued before the agreement's termination.  [*Id.* § 22(b).]  This included Lemire's right to receive commissions on sales that Lemire made before the Contract's termination.  [*Id.*]  But Lemire's right to receive commissions in the event of a termination must be "in accordance with the provisions of this Agreement and subject to any claim or set off of [Howmet]."  [*Id.*]

On top of those terms, the parties agreed to submit any dispute about the Contract to arbitration.  [*Id.* § 26.]  Indeed, the parties agreed to submit "[a]ny dispute arising out of or relating to this Agreement, including its validity, interpretation, application, scope, enforceability, performance, breach or termination" to arbitration.  [*Id.*]  The parties also agreed New York law governs their contractual relationship.  [*Id.* § 27.]

### B.  The Contract's Termination

For years, Lemire performed its contractual obligations.  [Notice of Removal ¶ 3, Ex. A, ¶ 23 (Complaint) (Docket No. 1).]  According to Lemire, the Contract expired in April 2020 based on the agreement's three-year term.  [Compl. ¶¶ 23-24.]  The Contract's original termination coincided with the global COVID-19 pandemic.  [*Id.* ¶ 24.]  As a result, the parties focused on "keeping the business afloat and keeping orders coming in," and continued their relationship as if the Contract was "in full force and effect."  [*Id.* ¶¶ 24-25.]  Lemire claims no one knew the Contract had expired.  [*Id.* ¶ 26.]

But in August 2022, Howmet's Vice President notified Lemire the company intended to terminate the Contract because it had expired years earlier.  [*Id.* ¶ 29.]  About a week later,

Howmet notified Lemire it was cancelling the Contract "effective immediately" regardless of the agreement's 180-day termination provision.  [*Id.* ¶¶ 31-32.]  At that time, Howmet had pending sales orders worth millions that Lemire had procured.  [*Id.* ¶¶ 43-46.]  Lemire claims Howmet owes it over $1.1 million in commissions for sales it secured before Howmet terminated the Contract.  [*Id.*]  Lemire lumps its commissions into two categories:  (1) "commission owed on sales that were already consummated or purchase orders received" before Howmet terminated the Contract; and (2) "commissions owed for purchase orders that were very likely to be consummated" within the Contract's 180-day termination period.  [*Id.* ¶ 42.]  According to Lemire, the parties agreed to the Contract's 180-day termination period "to ensure that [Howmet] could not terminate the [Contract] before Lemire was entitled to receive significant commissions."  [*Id.* ¶ 53.]

Following the termination, Lemire tried to resolve the dispute on the timing of the termination and commissions Howmet owed it.  [*Id.* ¶ 37.]  According to Lemire, Howmet asserted the Contract was ineffective because it had expired, no additional commissions were owed, and the Contract's 180-day termination provision "was not enforceable."  [*Id.* ¶ 39.]  Despite this position, Howmet paid Lemire certain commissions after it terminated the Contract.  [*Id.* ¶¶ 40, 51.]    Howmet and Lemire could not resolve their dispute because Howmet asserted the Contract was unenforceable because it had expired.  [*Id.* ¶ 55.]

### C.  Lemire's Demand for Arbitration

Lemire eventually invoked the Contract's arbitration provision and sent an arbitration demand to Howmet naming potential arbitrators.  [Lemire's Suppl. Sur. Reply Br. Ex. A (Docket No. 27-1) (Email exchanges between Lemire's and Howmet's counsel).]  Howmet refused Lemire's arbitration demand, stating "that the term of the contract with [Lemire] has

long expired, and therefore the [Contract's] arbitration provision is not operative." [*Id.*] Howmet then suggested mediation "to resolve this dispute." [*Id.*] Lemire's counsel responded, asserting he "was actually wondering what [Howmet's] position would be on the arbitration clause and [he was] not necessarily upset with the fact that [Howmet declared] it not 'operative.'" [*Id.*] According to Lemire's counsel, he "prefer[s] litigating in Court as opposed to arbitration anyway." [*Id.*] Lemire's counsel added he is "always amendable to mediation" and suggested Howmet's counsel propose some mediators. [*Id.*]

### D. Lemire's Lawsuit and the Pending Motions

When its attempts to resolve the dispute failed, Lemire sued Howmet in New Jersey state court claiming Howmet breached the Contract by improperly terminating the agreement and refusing to pay it commissions on sales pending at the time of the termination. [Compl. ¶ 55.] Lemire raises contract and quasi-contract claims against Howmet, and seeks a declaration that the Contract was effective when Howmet terminated it, and the Contract's 180-day termination provision was effective in August 2022. [*Id.* ¶¶ 58-92.] In its state court filing, Lemire certified under New Jersey Court Rule 4:5-1(b)(2) that "the matter in controversy is not the subject . . . of a pending arbitration proceeding, and no such . . . arbitration proceeding is contemplated." [Compl. R. 4:5-1 Certif.]

Howmet then removed this action, and moved to dismiss Lemire's lawsuit. [Docket Nos. 1, 16.] After receiving the parties' briefing, the Court held oral argument on Howmet's motion to dismiss. [Docket Nos. 20-22.] At oral argument, the Court, *sua sponte*, raised the Contract's arbitration provision and questioned the parties on whether this Court was the

proper forum to address Lemire's lawsuit.[2]   The Court ordered the parties to submit supplemental briefing on the Contract's arbitration provision and "whether arbitration is the proper forum to adjudicate [Lemire's] claims."  [Docket No. 21.]

In its supplemental briefing, Lemire argues the Contract's arbitration provision applies and "arbitration is the appropriate forum to adjudicate this action."  [Lemire's Suppl. Br. at 1 (Docket No. 23).]   Lemire explains that it faced a "'Hobson's Choice' as to where to commence this action because Howmet "had taken the position, prelitigation, that the [Contract] was no longer in force—having expired in 2020."  [*Id.* at 2.]  Recognizing that arbitration is the right forum, Lemire asks the Court to enforce the Contract and compel arbitration.  [*Id.*]

Howmet pushes back, arguing the Court cannot *sua sponte* compel arbitration because the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, only allows courts to compel arbitration if a party moves to compel it.  [Howmet's Suppl. Br. at 2 (citing 9 U.S.C. § 3) (Docket No. 24).]   Howmet asserts Lemire never requested arbitration before this Court's inquiry, and points out that Lemire certified in its state court complaint that "no . . . arbitration proceeding is contemplated."  [*Id.* at 8.]  Howmet also argues Lemire waived its contractual right to arbitrate by filing the state court lawsuit and never requesting arbitration even after Howmet removed that lawsuit here.  [*Id.* at 8-9.]

Based on the record, the Court granted Lemire leave to move to compel arbitration and ordered the parties to "thoroughly address Howmet's argument that Lemire waived the right to arbitrate by filing this lawsuit, Lemire's argument that Howmet refused [Lemire's

---

[2] *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 846-48 (3d Cir. 2003) (affirming district court's *sua sponte* order compelling defendant to move to compel arbitration "pursuant to the terms of the parties' agreement" and finding plaintiff was not unfairly surprised by the order).

arbitration demand] before Lemire commenced this action, and Lemire's allegation that Howmet acted in bad faith or with unclean hands by refusing [Lemire's arbitration demand.]" [Docket No. 28.] Lemire then moved to compel arbitration, and the parties have fully briefed that motion. [Docket Nos. 29-32.]

## II.    LEMIRE'S MOTION TO COMPEL ARBITRATION

### A. The Parties' Arguments

Lemire echoes many of the same arguments to support its motion to compel arbitration as it did in its supplemental briefing the Court ordered. [Lemire Mem. of Law in Support of Mot. Compel Arb. 9-13 (Lemire Arb. Br.) (Docket No. 29-4).] Lemire asserts the Contract's arbitration provision is valid and enforceable, and asserts Howmet agreed to arbitrate the enforceability of the Contract. [*Id.* at 10.] Lemire also contends it did not waive its contractual right to arbitrate by filing this lawsuit. [*Id.* at 11-13.] Pointing to the Third Circuit's decision in *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992), Lemire argues that waiver is a fact-sensitive inquiry requiring courts to consider many factors, like the timeliness of the request to arbitration, whether the party seeking arbitration has contested the merits of the lawsuit, whether the parties have engaged in discovery, and so on. [*Id.* at 12-13.] Looking to some of those factors, Lemire contends it did not waive its right to arbitrate because the parties: (1) are still at the pleading stage; (2) have not engaged in any discovery; and (3) the parties are addressing the enforceability of the Contract's arbitration provision now. [*Id.* at 13-14.] Because Lemire did not waive its right to arbitrate, Lemire contends this Court should compel arbitration. [*Id.* at 14.]

Howmet asks this Court to deny Lemire's motion to compel arbitration arguing Lemire waived its right to arbitrate. [Howmet Mem. of Law in Opp'n to Lemire Mot. to

7

Compel Arb. 8-14 (Howmet Opp'n Arb. Br.) (Docket No. 31).] Howmet first argues Lemire relies on inapposite and outdated caselaw. [*Id.* at 2-7.] Pointing to the United States Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), Howmet argues courts cannot consider prejudice when addressing whether a party waived its contractual right to arbitrate. [*Id.* at 4-7.] Based on *Morgan*, Howmet argues that many cases Lemire relies on, including *Hoxworth*, are no longer good law. [*Id.*] Howmet explains the Third Circuit in *White v. Samsung Electronics America, Inc.*, 61 F.4th 334 (3d Cir. 2023) expressly recognized that *Morgan* abrogated *Hoxworth*, and thus, the Court should disregard many of the cases Lemire relies on. [*Id.* at 6-7.]

After setting aside the cases Lemire relies on, Howmet contends Lemire waived its right to arbitrate. [*Id.* at 8-12.] Howmet rehashes many of the same arguments on waiver that it made in its supplemental briefing. [*Id.*] Howmet again points out that Lemire acted inconsistently with the intent to arbitrate when it filed this lawsuit and never sought to compel arbitration until this Court asked about the Contract's arbitration provision. [*Id.* at 8-11.] Finally, Howmet contends it did not act in bad faith or have unclean hands and asserts it did not rebuff Lemire's demand for arbitration. [*Id.* at 13-14.] Rather, Howmet characterizes its exchange with Lemire merely as a "different interpretation of the [Contract] and arbitration provision within it." [*Id.* at 13.] Howmet goes onto explain that this Court should not consider its conduct in the waiver analysis. [*Id.* at 13-14.] And Howmet asserts that Section 4 of the FAA provides a mechanism to enforce an arbitration provision when another party refuses to arbitrate but explains Lemire never pursued that avenue. [*Id.* at 12.]

### B. Discussion

The FAA "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order the parties to proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotations omitted).[3]

The Court assesses Lemire's motion to compel arbitration under Rule 12(b)(6) because Lemire references the Contract in its Complaint and Howmet included a copy of the

---

[3] When arbitrability is not apparent on the face of the complaint, then further development of the factual record is necessary, and the motion should be decided under a summary judgment standard. *Guidotti*, 716 F.3d at 774.

agreement in its motion to dismiss papers.[4]   When a complaint references extrinsic documents, courts can consider the documents so long as they are "undisputedly authentic" and "the complainant's claims are based upon [those] documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016).

### i.   Waiver of the Right to Arbitrate

In *Morgan*, the United States Supreme Court scrapped the prejudice-based waiver analysis the Third Circuit and other Circuits had adopted to determine whether a party waived a contractual right to arbitrate.   596 U.S. at 417.   In doing so, the *Morgan* Court explained federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'"   *Id.* (quoting *Moses H. Cone Mem. Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Laguna v. Chester Housing Auth.*, 662 F. Supp. 3d 545, 547 (E.D. Pa. 2023) ("Courts must assess the enforceability of arbitration provisions in contracts the same as any other contract.").   The *Morgan* Court went onto explain that waiver occurs where a party "intentional[ly] relinquish[es] or abandon[s] . . . a known right."   596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).   To determine "whether waiver has occurred, a court focuses

---

[4] Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the complaint must show it fails to state a claim. *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor will courts accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

on the actions of the p[arty] who held the right and is informed by the circumstances and context of each case." *White*, 61 F.4th at 339-40 (alteration in original) (internal quotation marks, citations, and footnotes omitted). Said another way, courts must determine whether the party asserting the right to arbitrate "knowingly relinquish[ed] [it] by acting inconsistently with that right[.]" *Morgan*, 596 U.S. at 419.

Given the record here, the Court agrees with Howmet that Lemire waived its right to arbitrate. The case here is an unusual one because Lemire filed this lawsuit in state court and now wants to pursue arbitration. *Sabatelli v. Baylor Scott & White Health*, 832 F. App'x 843, 848 (5th Cir. 2020) ("It is unusual for the plaintiff who filed the court action to later want to pursue arbitration.") Nonetheless, Lemire acted inconsistently with the right to arbitrate by filing this lawsuit and never raising the Contract's arbitration provision until the Court prodded the parties about it.

Courts have found a plaintiff who filed a lawsuit raising arbitrable claims acts inconsistent with an intent to arbitrate. *Id.* at 848 ("[W]hen the plaintiff is the reason there is a lawsuit in the first place, the first requirement for implied waiver will generally be satisfied."); *see also Pinnacle Constr. Grp. LLC v. SSC Tuscaloosa Apartments*, LLC, 2023 WL 6519262, at *2-3 (N.D. Ala. Oct. 5, 2023) (finding plaintiff waived contractual right to arbitrate by filing lawsuit and then waiting to assert contractual right to arbitrate); *Stonewater Roofing Ltd. Co., LLC v. Merryton Bossier, LLC*, 2022 WL 17580659, at *4 (W.D. La. Oct. 19, 2022) (finding plaintiff waived right to arbitrate breach of contract claim, reasoning that plaintiff's "complaint did not mention the arbitration clause, a desire to arbitrate any claim, or the need to file suit to obtain an injunction or otherwise preserve any rights while an arbitration was held").

Here, when Howmet refused Lemire's arbitration demand, *see* Docket No. 27-1, Lemire filed this lawsuit in state court never mentioning the Contract's arbitration provision or seeking to enforce it. [*See generally* Compl.] And when Lemire filed its Complaint in the state court, Lemire certified to that court it did not contemplate arbitration. [Compl. R. 4:5-1 Certif. (certifying that "no such . . . arbitration proceeding is contemplated).] Even after Howmet removed this action and moved to dismiss, Lemire never invoked the arbitration provision. Lemire's pre-motion and motion papers in opposition to Howmet's motion to dismiss are silent on the Contract's arbitration provision. That silence is telling. Had the Court not raised the Contract's arbitration provision at oral argument, the Court questions whether Lemire would have ever raised it.

In its supplemental briefing, Lemire claims it faced a "Hobson's Choice" because Howmet argued the Contract "was no longer in force—having expired in 2020." [Lemire's Suppl. Br. at 2.] Although Howmet characterizes its denial to arbitrate as merely "offer[ing] a different interpretation of the [Contract]" and not a refusal, *see* Howmet Opp'n Arb. Br. at 13, the fact remains Howmet did not agree to arbitrate after receiving the demand, *see* Docket No. 27-1. And while Howmet may have disputed the continued validity or enforceability of the Contract, the parties agreed that an arbitrator would resolve those issues. [Contract § 26.] In any event, Lemire's supposed "Hobson Choice" was illusory because the FAA provided an alternative choice. 9 U.S.C. § 4. By Section 4 of the FAA, Lemire could have petitioned this Court "for an order directing that such arbitration proceed in the manner provided for in [the Contract]" once Howmet refused to arbitrate (or offered a different interpretation of the agreement as Howmet claims). "To safeguard its right to arbitration, a party must do all it could reasonably have been expected to do to make the earliest feasible determination of

whether to proceed judicially or by arbitration." *J. Ambrogi Distrib., Inc. v. Teamsters Local Union No. 929*, ___ F. Supp. 3d ____, ____, 2023 WL 8548595, at *7 (E.D. Pa. 2023) (quoting *Sysco Minnesota, Inc. v. Teamsters Local 120*, 958 F.3d 757, 762 (8th Cir. 2020)).  Instead of safeguarding its right to arbitrate, Lemire filed this lawsuit never mentioning the Contract's arbitration provision.

Lemire's arguments against waiver focus on cases that required a showing of prejudice—a line of cases that *Morgan* has abrogated.  *White*, 61 F.4th at 339-40; *see also Jean-Baptiste v. Post Com. Real Est. LLC*, 2023 WL 5309902, at *5 n.10 (E.D. Pa. Aug. 17, 2023) (explaining the *Morgan* Court abrogated *Hoxworth* and the "line of cases" that "used a multi-factor, prejudice-based test to assess waiver").  Indeed, several of the factors that Lemire points to when arguing against waiver all relate to prejudice.  *See Hoxworth*, 980 F.2d at 926-27.  Thus, Lemire's reliance on those cases are misplaced.

To conclude, Lemire knew about the Contract's arbitration provision as shown by its arbitration demand on Howmet.  Instead of seeking to compel Howmet's compliance with that provision, Lemire filed a lawsuit never mentioning arbitration or seeking to enforce the provision until this Court raised it.  By its conduct, Lemire knowingly relinquished its contractual right to arbitrate, *see Morgan*, 596 U.S. at 419, and so, the Court denies Lemire's motion to compel arbitration.

## III.    HOWMET'S MOTION TO DISMISS

### A. The Parties' Arguments

Howmet first contends Lemire's breach of contract claim fails because Lemire has not shown Howmet had any obligation to pay a commission.  [Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Defs' MTD Br.) 6-9 (Docket No. 16-1).]  Pointing to the Contract, Howmet

asserts the agreement contains a condition precedent triggering Howmet's obligation to pay Lemire a commission—that is, when Howmet receives full and final payment from the customer. [*Id.* at 6-7.] Howmet argues Lemire's complaint contains no allegation it received any payment for sales Lemire seeks a commission on. [*Id.*] Because those allegations are lacking, Howmet contends it has "no contractual duty to pay any commission to Lemire," and as such, it could not have breached the agreement. [*Id.* at 7.]

Howmet also argues Lemire deserves no commissions for sales pending at the Contract's termination. [*Id.* at 8.] According to Howmet, the Contract's termination and compensation provisions must be read together. [*Id.* at 8-9.] Howmet points out the termination provision provides that if the Contract is terminated, Lemire's right to receive a commission must be "in accordance with" the Contract's compensation provision. [*Id.*] Reading the termination and compensation provisions together, Howmet contends Lemire is entitled to commissions that accrued at the Contract's termination—that is, sales for which Howmet has received full and final payment for the products Lemire sold. [*Id.*] Again, since Lemire has failed to allege Howmet has received payment for sales pending at the Contract's termination, Howmet contends Lemire receives no commissions for those sales. [*Id.*]

Turning to Lemire's breach of good faith and fair dealing claim, Howmet argues that claim too fails. [*Id.*] Howmet asserts the claim is duplicative of Lemire's breach of contract claim because Lemire bases the claim on Howmet's failure to pay it commissions, and so, the claim must be dismissed. [*Id.* at 10.] Howmet also contends Lemire cannot maintain the good faith and fair dealing claim because it has pled no facts showing the Contract's condition precedent on paying commissions has been satisfied. [*Id.* at 11.]

For Lemire's quasi-contract claims, Howmet argues those claims fail as well because an express contract exists here.  [*Id.* at 12-13.]  Howmet explains New York law bars quasi-contract claims—like the ones Lemire brings here—when an express agreement governs the parties' relationship.  [*Id.*]  Howmet points out that Lemire acknowledges the Contract governs their relationship and addresses the payment of commissions to Lemire.  [*Id.* at 13.]  Given the Contract's existence, Howmet contends Lemire quasi-contract claims must be dismissed.  [*Id.*]

Finally, Howmet argues Lemire has no right to any declaratory relief.  [*Id.* at 11-12.]  Howmet contends Lemire's declaratory judgment claim replicates its breach of contract claim, and any declaratory relief would not be useful.  [*Id.* at 12.]  In other words, the Court must determine the parties' rights and obligations under the Contract when adjudicating Lemire's breach of contract claim, including when the Contract terminated and whether Lemire is entitled to any commissions.  [*Id.*]  Thus, a separate declaratory judgment would not clarify the parties' legal relationship anymore than a decision on Lemire's contract claim. [*Id.*]  Accordingly, Howmet asks this Court to dismiss the declaratory judgment claim.

Lemire opposes the motion to dismiss, contending its complaint satisfies Federal Rule of Civil Procedure 8's pleading requirements and provides Howmet fair notice of its claims. [Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss (Pl.'s MTD Opp'n Br.) 16-19 (Docket No. 17).]

Turning to its breach of contract claim, Lemire argues Howmet miscomprehends the Contract's provision on when commissions are owed.  [*Id.* at 20-21.]  Lemire contends Howmet conflates the Contract's provision on the right to commissions and payment of commissions.  [*Id.* at 20.]  Lemire asserts that under the Contract, it "is entitled to payment

of commissions on sales made and orders obtained by [it]," regardless if Howmet receives payment from the customer.  [*Id.* at 21; *see also id.* at 27.]  Lemire argues the Contract does not require it to show Howmet received payment on sales Lemire made before Howmet's contractual obligation to pay a commission arises.  [*Id.*]

For its breach of good faith and fair dealing claim, Lemire contends the pleading rules allow a litigant to plead duplicative claims.  [*Id.* at 29-30.]  Even so, Lemire asserts its breach of good faith and fair dealing claim is distinct from its breach of contract claim, and seeks different relief.  [*Id.* at 30.]  Lemire argues Howmet's failure to adhere to the Contract's 180-day termination provision supports its good faith and fair dealing claim because Howmet ignored that provision "for the purpose of evading its commission obligations."  [*Id.* at 29 (quoting Compl. ¶ 71).]

Likewise, Lemire asserts its quasi-contract claims are permissible under the federal pleading rules because those rules allow duplicative claims.  [*Id.* at 32.]  And Lemire argues that under New York law, express contracts and contracts implied in fact are mutually exclusive legal theories, and New York courts have allowed contract implied in fact claims to move forward when the parties operated under an expired contract.  [*Id.* at 33.]  Lemire contends dismissal of his quasi-contract claims would be inappropriate because the complaint alleges that the parties continued their contractual relationship after the Contract's original three-year term expired.  [*Id.*]

Lastly, Lemire asserts its entitled to declaratory relief.  [*Id.* at 31.]  Again, Lemire argues the federal pleading rules allow duplicative claims.  [*Id.*]  Even so, Lemire contends its declaratory judgment claim is distinct from its contract claim because Lemire seeks a determination that the Contract and its 180-day termination provision were in effect when

16

Howmet terminated the agreement. [*Id.*] According to Lemire, that relief is separate from the relief Lemire seeks for its breach of contract claim. [*Id.*]

In reply, Howmet first contends Lemire applies the wrong pleading standard by ignoring the *Iqbal/Twombly* pleading standard that requires a plaintiff to "state a claim to relief that is plausible on its face." [Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss (Defs.' MTD Reply Br.) 2 (Docket No. 18) (quoting *Ashcroft v. Iqbal*, 555 U.S. 662, 678 (2009)).] Howmet asserts Lemire relies on an outdated pleading standard that this Court should ignore. [*Id.*]

Turning to Lemire's breach of contract and quasi-contract claims, Howmet contends Lemire ignores the Contract's condition precedent on Howmet's obligation to pay Lemire a commission. [*Id.* at 2-6.] Howmet reiterates its interpretation of the Contract's compensation and termination provisions, arguing Howmet's contractual obligation to pay Lemire a commission arises only when Howmet receives full and final payment from the customer for sales Lemire made. [*Id.*] Because Lemire's complaint does not allege those facts, Howmet contends the breach of contract claim fails. [*Id.* at 6.] Howmet asserts Lemire's complaint must allege the Contract's condition precedent has been satisfied, otherwise, the claim should be dismissed. [*Id.*]

For Lemire's breach of good faith and fair dealing claim, Howmet contends the federal pleading rules do not allow a plaintiff to plead duplicative claims as Lemire suggests. [*Id.* at 9.] Instead, the rules allow a litigant to plead inconsistent claims. [*Id.*] In any event, Howmet asserts Lemire's breach of good faith and fair dealing claim replicates its breach of contract claim. [*Id.* at 10.] Howmet argues both claims allege the same wrongful conduct: the failure

to pay commissions.  [*Id.*]  The claims are thus duplicative, and cannot be maintained under New York law.  [*Id.*]

Finally, Howmet rehashes its arguments that Lemire is not entitled to declaratory relief.  [*Id.* at 10-11.]  Howmet again argues declaratory relief will not be useful because the Court will address the parties' contractual relationship for Lemire's breach of contract claim.  [*Id.*]

### B.  Discussion

As noted, this Court must dismiss Lemire's claims if its Complaint fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).  The Court accepts as true Lemire's Complaint's allegations and affords Lemire "every favorable inference to be drawn therefrom."  *Malleus*, 641 F.3d at 563 (3d Cir. 2011) (quoting *Kulwicki*, 969 F.2d at 1462).  The Court will dismiss Lemire's Complaint if Lemire has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

### i.  Breach of Contract Claim

The parties agreed New York law governs their contractual relationship.  [Contract § 27.]  To prevail on a breach of contract claim under New York law, Lemire must show:  (1) a contract exists; (2) Lemire performed its contractual obligations; (3) Howmet breached its contractual obligations; and (4) Lemire suffered damages because of that breach.  *34-06 73, LLC v. Seneca Ins.,* 198 N.E.3d 1282, 1287 (N.Y. 2022).  Contracting parties may condition a party's obligation to perform through conditions precedent.  *Deutsche Bank Nat'l Tr. Co. v Flagstar Cap. Mkts.*, 112 N.E.3d 1219, 1225 (N.Y. 2018).

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement

arises." *Oppenheimer & Co., v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (internal citation and quotation marks omitted). New York courts do not "readily assume[]" a contract contains a condition precedent, and require them to be expressed in "unmistakable language." *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (quoting *Oppenheimer*, 660 N.E.2d at 419); *see also Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008) ("New York courts are cautious when interpreting a contractual clause as a condition precedent, and they will 'interpret doubtful language as embodying a promise or constructive condition rather than an express condition.'" (quoting *Oppenheimer*, 660 N.E.2d at 418)). While "specific, talismanic words are not required," certain "linguistic conventions of condition"—like the use of the word or phrase "if, on condition that, provided that, in the event that, and subject to"—can "make plain" a condition precedent. *Bank of N.Y.*, 821 F.3d at 305-06 (internal citations and quotation marks omitted). Courts decide, "as a matter of law, whether a condition precedent . . . exists under the terms of a contract." *Sohm v. Scholastic, Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (quoting *Powlus v. Chelsey Direct, LLC*, 2011 WL 135822, at *4 (S.D.N.Y. Jan. 10, 2011)).

If the contract spells out a condition precedent, courts strictly enforce the condition to carry out the parties' intent. *Baraliu v. Vinya Cap., L.P.*, 765 F. Supp. 2d 289, 299 (S.D.N.Y. 2011) ("Where the language of a contract makes it unmistakably clear that a condition precedent was intended, literal observance is required." (internal citation and quotation marks omitted)); *see also David Fanarof, Inc. v. Dember Const. Corp.*, 600 N.Y.S.2d 226, 227-28 (N.Y. App. Div. 1993) ("When commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is

19

whether the condition precedent has been complied with.").   Courts will excuse the non-occurrence of a condition precedent only through waiver, forfeiture, or breach. *Oppenheimer*, 660 N.E.2d at 418.

When a contract contains a condition precedent, and plaintiff has not alleged satisfaction of the condition, courts will dismiss the breach of contract claim for failure to state a claim. *Comerica Leasing Corp. v. Bombardier, Inc.,* 2019 WL 11027701, at *6 (S.D.N.Y. Sept. 30, 2019).   Federal Rule of Civil Procedure 9(c) requires litigants to "allege generally [in a pleading] that all conditions precedent have occurred or been performed."   This is a modest pleading requirement, and an allegation that plaintiff "has complied with all of the conditions precedent" will suffice. *Jeddo Coal Co. v. Rio Tinto Procurement (Singapore) PTE Ltd.*, 2017 WL 937737, at *9 (M.D. Pa. 2017); *accord Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 112 (3d Cir. 2014) (ruling *Iqbal*'s and *Twombly*'s plausibility standard inapplicable to pleading conditions precedent).

Here, this Court construes the Contract's compensation provision to determine whether Howmet's obligation to pay Lemire a commission is subject to a condition precedent. In doing so, this Court "give[s] fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *Sears v. Sears*, 30 N.Y.S.3d 770, 771 (N.Y App. Div. 2016 (internal citation and quotation marks omitted); *see also Global Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 95 (2d Cir. 2021) (explaining courts must construe contracts as a whole giving words and phrases their ordinary meaning).   If the Contract's language is "clear and unambiguous," the interpretative process is over, and the Court will enforce the

agreement as written.  *Global*, 22 F.4th at 94 (quoting *Lilly v. City of New York*, 934 F.3d 222, 236 (2d Cir. 2019)).

By Section 10(a) of the Contract, Howmet agreed to pay Lemire "as full compensation" for services performed under the agreement a commission based on a Commission Schedule.  [Contract § 10(a).]  Section 10(b) of the Contract discusses when a commission is earned and paying an earned commission.  [*Id.*]  That section states:

> Commissions are earned as and when [Howmet] receives full, final and complete payment for the Products sold with respect to each invoice.  Payment of commissions earned by [Lemire] shall be made by [Howmet] no later than the last day of the month following the month in which payment from the customer is received by [Howmet.]

[*Id.*]

That section's language is clear:  Howmet only agreed to pay Lemire "earned" commissions.  Section 10(b) requires Howmet to receive "full, final, and complete payment" before a commission is earned.  Once Howmet receives such payment, then Lemire's commission is earned, and only then Howmet's contractual obligation to pay arises.  Thus, Section 10(b) creates a condition precedent on Howmet's obligation to pay Lemire a commission.  *See Aidamark, Inc. v. Roll Forming Corp.*, 580 F. App'x 408, 415 (6th Cir. 2014) (finding contract phrase "that [a]ll commissions herein provided for shall be considered as earned on the date of payment by the customer" created a condition precedent on defendant's obligation to pay commission); *cf. also Peak v. Tigergraph, Inc.*, 2021 WL 4061703, at *2, 6 (N.D. Cal. Sept. 7, 2021) (ruling plaintiff not entitled to commissions following termination because commissions were not "earned" since contract provided commissions were earned when defendant "receives payment in full from customer").

21

Lemire does not allege Howmet received full and final payment on any of the sales it seeks a commission on.  [Compl. ¶¶ 42-46.]  Lemire's Complaint only refers to "sales that were already consummated and purchase orders received" and sales "very likely to be consummated" within the Contract's 180-day termination provision.  [*Id.* ¶ 42.]  But the Complaint contains no allegation that Howmet received payment on these consummated or "very likely" consummated sales.  Because Lemire has not alleged the occurrence of the Contract's condition precedent on Howmet's obligation to pay a commission, Lemire's breach of contract claim, as currently pled, fails to state a claim.  *Comerica,* 2019 WL 11027701, at *6; *see also Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, 2011 WL 666187, at *3 (S.D.N.Y. Feb. 9, 2011) (dismissing breach of contract claim for failure to state a claim because plaintiff failed to allege satisfaction of contract's condition precedent).

Lemire's argument that Section 10 only addresses the timing of a commission payment and not his right to receive a commission is unavailing.  [Pl.'s MTD Opp'n Br. at 20.]  Section 10(b) addresses both the right to receive a commission and the timing of payment. *See Aidamark*, 580 F. App'x at 414-15 (rejecting similar argument that contractual language on when commission is earned "governs the timing of when [] a commission must be paid").  If Section 10(b)'s language on when commissions are earned dealt with the timing of the payment as Lemire suggests, then the next sentence on when Howmet is to pay Lemire a commission—the month after receiving payment from the customer—would be superfluous. Courts cannot construe contractual language that would render another provision meaningless. *Walker v. Thompson*, 404 F. Supp. 3d 819, 825 (S.D.N.Y. 2019).

Lemire has pointed to no other Contract provision where Howmet agreed to pay Lemire a commission merely for "sales made and orders obtained."  [Pl.'s MTD Opp'n Br.

at 21.]   Rather, by Section 10(b), Howmet only agreed to pay an "earned" commission. [Contract § 10(b).]   Lemire's interpretation of the Contract's compensation provision contradicts the agreement's plain meaning, and thus this Court cannot accept it.   *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) (explaining that New York law requires courts to "interpret a contract so as to give effect to all of its provisions" and courts  "cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist" (internal citations and quotation marks omitted)).

Lemire's interpretation of the Contract's termination provision—that it is entitled to commissions on "all sales made and orders obtained" within the Contract's 180-day termination provision, Pl.'s MTD Opp'n Br. at 22—also contradicts the agreement's compensation provision.   The termination provision at issue provides that:

> No termination of this Agreement shall affect any rights or obligations of either of the parties that shall have accrued prior to the effective date of such termination, including [Lemire's] right to receive, in accordance with the provisions of this Agreement and subject to any claim or set off of [Howmet], any commissions under this Agreement on sales made before such termination pursuant to orders obtained by [Lemire] in accordance with this Agreement.

[*Id.* § 22(b).]   The Contract's termination provision preserves Lemire's right to receive a commission if the right "accrued" before the "effective date" of the agreement's termination. [*Id.*]   In addition, the right to receive a commission following the Contract's termination must be "in accordance with the provisions of this Agreement."   [*Id.*]   This provision must be read together with the Contract's compensation provision because that provision addresses Lemire's right to receive a commission.   And as explained above, Section 10(b) provides

Lemire earns a commission when Howmet receives "full, final, and complete payment" from the customer. [*Id.* § 10(b).]

Under a plain reading of both provisions, Lemire's right to receive a commission accrues when Lemire earns a commission under Section 10(b), and Lemire is entitled to earned commissions for any sales made before the Contract's termination. So Howmet must pay Lemire a commission on any sale Lemire made before the Contract's termination that Howmet received full and final payment from the customer. Construing the termination provision in this way gives effect to all the Contract's terms. *Net2Globe*, 273 F. Supp. 2d at 445. Otherwise, Section 10(b)'s language on when commissions are earned would be inoperable during the 180-day termination provision, rending the termination's provision language "in accordance with the provisions of this Agreement" meaningless. *Walker*, 404 F. Supp. 3d at 825. Because Lemire has not alleged satisfaction of the Contract's condition precedent, the Court dismisses its breach of contract claim without prejudice.

The Court gives Lemire an opportunity to amend to plead allegations showing the Contract's condition precedent has been satisfied concerning sales it seeks commissions on. If Lemire opts to amend, Lemire should be mindful that Federal Rule of Civil Procedure 9(c)'s pleading requirement is not rigorous. *Jeddo*, 2017 WL 937737, at *9. Still, Lemire must plead enough facts for the Court to infer satisfaction of the Contract's condition precedent—say, typical timeframes that Lemire completed a sale to customer payment or Howmet's payment of a commission, a prior history of commission payments, whether customers typically moved forward with purchase orders Lemire obtained without cancellation or modification, and so on. Since those allegations are lacking here, the Court cannot infer the Contract's condition

precedent has been satisfied triggering Howmet's obligation to pay the sought-after commissions.

### ii. Breach of Good Faith and Fair Dealing Claim

In New York, the covenant of good faith and fair dealing is implied in all contracts and prevents contracting parties from "do[ing] anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kitchen Winners NY Inc. v. Rock Fintek LL*C, 668 F. Supp. 3d 263, 287-88 (S.D.N.Y. 2023) (quoting *Thyroff v. Nationwide Mut. Ins.,* 460 F.3d 400, 407 (2d Cir. 2006)). "Ordinarily, a breach of the duty of good faith and fair dealing is considered a breach of contract" and "[r]aising both claims in a single complaint is redundant[.]" *Trump v. Trump*, 192 N.Y.S.3d 891, 907 (N.Y. Sup. Ct. 2023) (first alteration in original) (quoting *ARS Kabirwala, LP v. EL Paso Kabirwala Cayman Co.*, 2017 WL 3396422, at *4 (S.D.N.Y. Aug. 8, 2017)). *Trump v. Trump*, 192 N.Y.S.3d 891, 907 (N.Y. Sup. Ct. 2023) (first alteration in original) (quoting *ARS Kabirwala, LP v. EL Paso Kabirwala Cayman Co.*, 2017 WL 3396422, at *4 (S.D.N.Y. Aug. 8, 2017)). New York courts routinely dismiss breach of good faith and fair dealing claims that duplicate breach of contract claims—that is, both claims are based on the same facts and seek identical damages. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 369-70 (S.D.N.Y. 2016), *aff'd*, 850 F. App'x 28 (2d Cir. 2021). Courts will allow a plaintiff to "bring two breach of contract claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations." *Dorset Inds., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Hosp. Auth. of Rockdale Cty. V. GS Cap. Partners V Fund, L.P.*, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011)).

New York courts rarely allow breach of good faith and fair dealings claims based on a party's decision to exercise a contractual termination provision. *See*, *e.g.*, *Burdett Radiology Consultants, P.C. v. Samaritan Hosp.*, 557 N.Y.S.2d 988, 991 (N.Y. App. Div. 1990) (explaining implied covenant of good faith and fair dealing "does not apply to a party's express right to terminate a contract"); *see also Martin v. Tumblr, Inc.*, 2017 WL 11665339, at *6 (S.D.N.Y. Feb. 2, 2017) (finding plaintiff's breach of implied covenant of good faith and fair dealing claim failed as a matter of law because the implied covenant "does not limit the operation of unrestricted termination clauses").   But in contracts providing for sales commissions, the implied covenant of good faith and fair dealing limits a party's ability to terminate an agreement after a commission is earned without paying the commission. *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 112, 114 (2d Cir. 1985).   This is so because "the contract for payment of commissions creates rights distinct from the employment relationship . . . and obligations derived from the covenant of good faith implicit in the commission contract may survive the termination of the employment relationship." *Id.* at 112.

In *Wakefield*, an at-will employee sued his former employer for unpaid commissions claiming the employer violated the implied covenant of good faith and fair dealing by terminating him "to avoid paying him commissions on sales that were completed but for formalities." *Id.*  The Second Circuit acknowledged that under New York law, the implied covenant cannot modify an employer's right to terminate at an-will employee. *Id.*  Still, mindful of the implied covenant, the *Wakefield* court refused to read a contractual provision "to enable the [employer] to terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed." *Id.*  While the *Wakefield* court prohibited the former employee to recover for his termination *per se*, the court would permit the employee to

recover earned commissions if he could "attempt to prove that [the employer's] desire to avoid paying him commissions that were virtually certain to become vested was a substantial motivating factor in the decision to discharge him." *Id.* at 114.

Following *Wakefield*, courts in the Second Circuit (applying New York law) have allowed breach of implied covenant of good faith and fair dealing claims in sales commission settings where plaintiffs have shown their employer terminated them to avoid paying commissions. *Houlhan v. Raptor Trading Sys.*, 2018 WL 3231662, at *8 (S.D.N.Y. Feb. 12, 2018) (collecting cases).   To prevail on such a claim, the plaintiff must show its right to a commission "vested" or was "virtually certain to become vested." *Id.* (quoting *Wakefield*, 769 F.2d at 113); *see also DCMR v. Trident Precision Mfg., Inc.*, 110 F. App'x 205, 206 (2d Cir. 2004) (affirming dismissal of breach of implied duty of good faith and fair dealing claim even though plaintiff alleged defendant terminated contract to avoid paying plaintiff commissions because plaintiff failed to show "it was entitled to additional payments under the contract").

Here, despite Howmet's contrary arguments, Lemire's breach of the implied covenant of good faith and fair dealing claim does not replicate his breach of contract claim.  [*Compare* Compl. ¶¶ 61-65 (breach of contract claim for failure to pay commissions) *with id.* ¶¶ 68-72 (breach of implied covenant claim for terminating agreement to avoid paying commissions).] Both claims are "factually distinct." *Dorset Inds.*, 893 F. Supp. 2d at 405.  Indeed, Lemire alleges Howmet breached the implied covenant by terminating the Contract "for the purpose of evading its commissions obligations."  [Compl. ¶ 71.]

Still, Lemire can only move forward with its implied covenant claim by showing its right to a commission was "vested" or "virtually certain to become vested." *Houlhan*, 2018 WL 3231662, at *8 (quoting *Wakefield*, 769 F.2d at 113).  Again, Lemire's Complaint contains

no allegation that the commissions it seeks were earned under the Contract because Lemire has failed to allege Howmet received full and final payment from the customer (discussed above).   Without showing its entitlement to the commissions it seeks, Lemire's implied covenant claim, as pled, fails.   *DCMR*, 110 F. App'x at 206; *see also Bravia Cap. Partners, Inc. v. Fike*, 2010 WL 3359470, at *7 (S.D.N.Y. Aug. 25, 2010) (dismissing breach of implied covenant of good faith and fair dealing claim where contract imposed a condition precedent on plaintiff's obligation to pay defendant a commission and defendant's termination did not violate implied duty because defendant did not earn the commission).   And Lemire alleges no facts for the Court to infer Lemire's right to a commission would be "virtually certain" to vest.   *Houlhan*, 2018 WL 3231662, at *8 (quoting *Wakefield*, 769 F.2d at 113).   Indeed, Lemire does not even allege facts showing the typical timeframe that Howmet receives payment from the customer on sales Lemire made, such as pointing to payment on prior sales Lemire made commissions on.   Accordingly, this Court dismisses the implied covenant claim without prejudice.

### iii.   Implied in Fact Contract Claim

"A contract implied in fact is as binding as one that is express, and similarly 'requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'" *Annabi v. New York Univ.*, 2023 WL 6393422, at *7 (S.D.N.Y. Sept. 29, 2023) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506-07 (2d Cir. 2009)).   An implied contract may be based on the parties' conduct, and whether the parties formed an implied contract "involves factual issues" on "parties' intent and surrounding circumstances." *Airday v. City of N.Y.*, 310 F. Supp. 3d 399, 421 (S.D.N.Y. 2018).   New York courts prohibit contract implied in fact claims "where there is an express contract covering the subject matter involved." *Saeed v.*

*Kreutz*, 606 F. App'x 595, 597 (2d Cir. 2015).   But under New York law, "the parties' conduct after the expiration of [a] written contract, including [a party's] continued rendition of services, [the other party's] acceptance of those services and . . . payment . . . in accordance with the terms of the written contract" can "establish a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract." *Watts v. Columbia Artists Mgmt., Inc.*, 591 N.Y.S.2d 234, 236 (N.Y. App. Div. 1992); *accord Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir.1946) ("When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.") (footnote omitted).

Here, Lemire plausibly alleges the parties created a contract implied in fact through conduct following the Contract's expiration.  The Contract expired in April 2020, but Lemire alleges the parties continued their contractual relationship as if the agreement had not. [Compl. ¶¶ 26, 30.]  Lemire also asserts Howmet continued to pay Lemire commissions even after Howmet terminated the Contract.  [*Id.* ¶ 40.]  Those facts are enough to show a contract implied in fact.  *Watts*, 591 N.Y.S.2d at 236-38 (finding parties created contract implied in fact where "defendant continued to provide services to plaintiff and plaintiff continued to pay for those services in the manner provided for in the expired contract"); *see also Millenium Expressions, Inc., v. Chauss Mktg., Ltd.*, 2007 WL 950070, at *5-6 (S.D.N.Y. Mar. 30, 2007).

But under New York law, a contract implied in fact formed after an express contract expires contains "substantially the same terms and conditions" as the original contract.  *Watts*, 591 N.Y.S.2d at 236.  Thus, if the parties created a contract implied in fact, that agreement would contain a condition precedent on Howmet's obligation to pay Lemire a commission

like Section 10(b) does.  *See Int'l Techs. Mktg.*, 157 F. Supp. 3d at 366 (explaining that contract implied in fact would "include a comparable expiration provision" like parties' prior written agreements had).  Lemire's Complaint has no allegation suggesting Howmet deviated from Section 10(b)'s payment provisions after the Contract expired for this Court to infer the parties created a new contract without the condition precedent.  Said another way, Lemire has not alleged Howmet paid it a commission before Howmet received full and final payment from a customer.  Thus, Lemire's contract implied in fact claim suffers the same downfall as its breach of contract claim.  So the Court dismiss that claim without prejudice too.

### iv.   Quasi-Contract Claim

A quasi-contract "is not a contract all, but rather an obligation which the law creates from the circumstances present based upon equitable principles which serve to operate whenever justice requires that compensation be made." *Judge Rotenberg Educ. Ctr. Inc. v. Blass*, 882 F. Supp.2d 371, 377 (E.D.N.Y. 2012).  Unlike an express contract or contract implied in fact, "no promise or agreement was ever made or intended" for a quasi-contract.  *Id.* at 378. Ordinarily, the existence of a contract— whether written, oral, or implied in fact—governing the subject matter of the dispute bars recovery in quasi-contract.  *Mancuso v. L'Oreal USA, Inc.*, 2021 WL 1240328, at *4 (S.D.N.Y. 2021) ("[Q]uasi-contractual claims are generally precluded where valid, enforceable contracts governing the particular subject matter of the case exist between the parties." (alteration in original) (quoting *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, 2020 WL 5820599, at *35 (E.D.N.Y. Sept. 30, 2020)); *see also Nat'l City Com. Cap. Co., v. Global Golf, Inc.*, 2009 WL 1437620, at *1 (E.D.N.Y. 2009) (explaining plaintiff's quasi-contract claim "may only be asserted in the absence of an agreement between the parties—be it oral, written or implied-in-fact").  There are two exceptions to this rule:  (1) "a

bona fide dispute exists as to the existence of the contract," or (2) the "contract does not cover the dispute in issue." *Mancuso*, 2021 WL 1240328, at *4 (internal citations and quotation marks omitted). If either exception applies, the plaintiff may proceed on both breach of contract and quasi-contract theories. *Id.*

This Court dismisses Lemire's quasi-contract claim because Lemire does not dispute the validity of the Contract, and the Contract covers Lemire's claims for unpaid commissions. *See id*. Indeed, Lemire bases its quasi-contract claim on Howmet's failure to pay commissions—conduct the Contract's explicitly governs. And Lemire seeks the same damages for its quasi-contract claim as it does for its other contract claims. [Compl. ¶¶ 66, 82,92.] Because Lemire's Complaint alleges the existence of a valid contract (either express or implied in fact), and Lemire does not dispute the validity of those agreements, Lemire cannot recover under a quasi-contractual theory. *Mancuso*, 2021 WL 1240328, at *4 (dismissing quasi-contract claim where binding contract existed among parties); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (finding quasi-contractual claims barred because of a contract implied in fact); *see also Int'l Techs. Mktg.,* 157 F. Supp. 3d at 371 (dismissing plaintiff's quasi-contract claim because valid contract governed the parties' relationship and plaintiff's damages for quasi-contract claim were the same as breach of contract claim).

### v. Declaratory Judgment Claim

For starters, it is unclear whether Lemire brings its declaratory judgment claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, or New York's counterpart, the Declaratory Judgment statute, N.Y. C.P.L.R. 3001. In its opposition brief, Lemire raises

New York's declaratory judgment law.  [Pl.'s MTD Opp'n Br. at 31.]  Thus, this Court assumes Lemire seeks relief under New York law.

New York courts do not permit declaratory relief if it will not "serve some useful purpose to the parties."  *CTC Mktg., LLC v. Tristar Prods., Inc.*, 2023 WL 6258540, at *7 (S.D.N.Y. Sept. 26, 2023) (quoting *Koch v. Rodenstock*, 2012 WL 5844187, at *12 (S.D.N.Y. May 9, 2012)).  In fact, "a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract."  *Apple Records v. Capital Records*, 529 N.Y.S.2d 279, 281 (N.Y. App. Div. 1988).  Accordingly, New York "courts routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action."  *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017).

Here, Lemire seeks a declaration that the Contract "was in force at the time [Howmet] sought to abruptly terminate the agreement" and the agreement's "180-day notice provision . . . was enforceable in August 2022" so that Howmet had to provide Lemire 180-days notice before terminating the Contract.  [Compl. Wherefore Clause.]  This Court will address the enforceability of the Contract when adjudicating Lemire's breach of contract and contract implied in fact claims.  Those claims will require the Court to determine whether the Contract expired in April 2020, or whether, through conduct, the parties either modified the Contract or created a contract implied in fact.  Thus, Lemire's declaration judgment claim replicates its other contract claims, and so, declaratory relief "is unnecessary and inappropriate."  *Apple Records*, 529 N.Y.S.2d at 281; *see also Upfront Megatainement, Inc. v. Thiam*, 189 N.Y.S.3d 50, 53 (N.Y. App. Div. 2023) (ruling trial court properly dismissed declaratory judgment claim

as duplicative given breach of contract claim).  Thus, the Court dismiss the declaratory relief claim without prejudice.

## IV.   CONCLUSION

For the above reasons, the Court **DENIES** Lemire's Motion to Compel Arbitration (Docket No. 29) and **GRANTS** Howmet's Motion to Dismiss (Docket No. 16).  The Court **DISMISSES** Lemire's Complaint **WITHOUT PREJUDICE**, and grants Lemire leave to file an amended complaint to cure the deficiencies outlined above within 30-days from the date of the accompanying Order.

An accompanying Order of today's date shall issue.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: June 17, 2024